# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TANESHA HENDERSON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:09-cv-36-SJM |
| v. | ) | |
| | ) | |
| OFFICER WILLIAM BAILEY, | ) | |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| TORI SCOFIELD, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:09-cv-37-SJM |
| v. | ) | |
| | ) | |
| OFFICER WILLIAM BAILEY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

McLAUGHLIN, SEAN J., District J.

Plaintiffs Tanesha Henderson and Tori Scofield commenced separate but related federal civil rights actions under 28 U.S.C. § 1983 after they were arrested on charges of aggravated assault by the Defendant, Officer William Bailey of the Erie Police Department. The Defendant has filed motions for summary judgment in each case. This Court has subject matter jurisdiction over both civil actions pursuant to 28 U.S.C. §§ 1331 and 1343(a). For the reasons set forth below, the Defendant's motions will be denied.

1

## I. STANDARD OF REVIEW

Summary judgment must be granted when no genuine dispute exists as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A disputed fact is 'material' if it would affect the outcome of the suit as determined by the substantive law," *Bouriez v. Carnegie Mellon Univ.*, 585 F.3d 765, 771 (3d Cir.2009) (citation omitted), and a factual dispute is "genuine," and thus warrants trial, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49, 252 (1986).

Here, the relevant facts are gleaned from the Defendant's Statement of Material Facts ("SMF") filed by Defendant Bailey [16] in Case No. 1:09-cv-36-SJM, the Responsive Concise Statement of Material Facts ("RCSMF") filed by Plaintiff Henderson [22],[1] and portions of the summary judgment record. Where factual disputes exist, we view the evidence, and all reasonable inferences arising therefrom, in the light most favorable to the Plaintiffs, the non-moving parties. *Faylor v. Szupper*, No. 10-2181, 2011 WL 11018 at *3 (3d Cir. Jan. 4, 2011) (slip copy).

## II. BACKGROUND FACTS

On or about June 9, 2008, Plaintiff Scofield received a call indicating that a man, later identified as Thomas Mysnyk, burglarized the home of her friend, Plaintiff Tanesha Henderson. Scofield proceeded to Henderson's residence located at 146 East 30th

---

[1] These documents appear to be identical to the Statement of Material Facts [16] and the Responsive Concise Statement of Material Facts [23] filed in *Scofield v. Bailey*, Case No. 1:09-cv-37. For the sake of simplicity, we will cite only to the filings at *Henderson v. Bailey*, Case No. 1:09-cv-36, except to the extent our discussion requires otherwise.

Street in Erie, Pennsylvania. Scofield called Henderson, who was not at home, to inform her that she had gone to Henderson's house and found that the door had been kicked in. Henderson then immediately drove to her home. Neither Henderson nor Scofield called the police to respond to the burglary; instead, Henderson grabbed a bat and both she and Scofield headed toward the residence of Thomas Mysnyk, which was located just down the street at 113 East 30th Street.

The details of what occurred next is subject to differing accounts. However, it is agreed that Henderson and Scofield arrived at Mysnyk's residence, where they stood in the driveway while Henderson, at least, began yelling and swearing about the break-in at her house. According to Plaintiffs, Henderson held the bat while Scofield stood by as a witness, unarmed, and saying nothing. Mysnyk, they claim, remained inside his apartment during this entire time. Plaintiffs further claim that, after a short while, they left the scene and returned to Henderson's home.

Mysnyk's next door neighbor, Francis Heasley, claims that, during this incident, he observed an unarmed black female (Henderson) standing in the driveway yelling and using profanities, while a white woman (Scofield) stood near Mysnyk's door, looking agitated, and holding a tire iron in one hand and possibly a second object in the other. This prompted Heasley to call 911. Heasley did not observe the females enter Mysnyk's apartment, nor did he observe Mysnyk to be outside during this altercation.

Meanwhile, the disturbance caught the attention of other neighbors or lookers-on, who also called 911. This resulted in a number of dispatches being sent out to Erie police officers in the area. Among the dispatches were a report that two black males had gone inside a house with baseball bats, a separate report that males and females

3

had "busted into" a house with bats and tire irons, and yet another report that a "group of people" had "just busted in" with bats and tire irons. (See Def.'s Ex. E [17-5] at p. 5.) Numerous Erie police officers responded to the dispatches, among them Defendant Bailey, who agreed to handle the call. Also responding to the scene in separate cruisers were Officer Donald Sornberger and Officer Melanie Szoszorek.

What exactly unfolded upon the police officers' arrival is, in many respects, unclear and subject again to varying accounts. Bailey claims that he was the first officer on-scene and, upon arriving, he observed Mysnyk yelling and screaming and staggering down the stairs of his residence. Bailey further claims he went straight to Mysnyk and guided him outside, during which time he observed that Mysnyk bleeding from his face and head area with swelling about his head. According to Bailey, Mysnyk kept saying that his drug dealer, "Joker," had beaten him up. Bailey also claims that he received information from Officer Sornberger, reportedly obtained from Heasley, that a black female and a heavier-set white female with tattoos had been observed arguing with Mysnyk about a break-in. According to this account, the white female had been observed holding a 4-way tire iron and possibly a bat; the two women had been seen arguing with Mysnyk and then, shortly thereafter, Mysnyk was observed to be lying on the ground, injured.

Heasley's testimony concerning what he reported to the police paints a somewhat different picture. Heasley claims that, upon the officers' arrival, he approached a white officer (presumably Sornberger) and informed the officer that he had seen a black female yelling and screaming near the bottom of the driveway and a white female standing with a tire iron in her hand, and possibly another object as well,

4

next to the entrance of Mysnyk's apartment. Heasley claims that he never saw Mysnyk outside the house arguing while the two females were present and did not report such information. He maintains that he first saw Mysnyk outside of his residence after the police had responded to the call. More specifically, he claims that, after talking to two officers (presumably Sornberger and Bailey), they all heard a noise coming from Mysnyk's entranceway and went inside to discover Mysnyk lying in pain, beat up and groaning.

The record is also somewhat ambiguous as to how and when Sornberger communicated to Bailey the information obtained from Heasley. Sornberger testified that he included it in a police report completed later that night and also communicated it to Bailey verbally; however, while Bailey contends he learned this information on-scene, Sornberger's deposition testimony was less clear and suggested that the exchange could have occurred later on at the police station.

In any event, Sornberger, after talking to Heasley, put over the air a description of the individuals the police were seeking. At around this same timeframe, Erie police officers Shawn McGill and Jerry Stevens were responding to the 911 dispatch concerning the alleged fight in the 100 block of East 30th Street. There were multiple calls for the incident, among them a call about someone being beaten up with bats and the second indicating that a black male, white female, and black female had assaulted an individual at 113 East 30th Street. According to Officer Stevens, the description of the possible actors included "one black female, one black male, and one white female with multiple tattoos on the legs, possibly." (Def.'s Ex. Q [17-17] at pp. 17.) According to Officer Stevens, the female was reported to be "heavier-set." (*Id.*)

Officers McGill and Stevens observed Plaintiffs Henderson, a black female, and Scofield, a heavier set white female with tattoos, at 146 East 30th Street, not far from the scene of the alleged assault. At the time Officers McGill and Stevens encountered the Plaintiffs, Henderson was in possession of a baseball bat. Both women were very upset about Henderson's house being burglarized. Henderson was referring to "that motherfucker" burglarizing her house, while Scofield was asking whether the police were going to do anything about the burglary. (SMF ¶30; RCSMF ¶ 30.) Officer McGill attempted to calm the women down and took the bat from Henderson.

What happened next is the subject of some dispute. According to Bailey, the women were "1015'd," meaning taken into custody and transported to the Erie Police Department. According to the Plaintiffs, they were first taken to the scene of the alleged assault and presented to Mysnyk, who was asked if they could identify them, to which he responded, "No, I don't know who did this to me." (Plaintiff's Statement of Material Facts ("PSMF" [22] at ¶ 1.) Plaintiffs claim that, after Mysnyk failed to identify them, Defendant Bailey told his fellow officers to make the arrest. (*Id.* at ¶ 2.) Either way, it is agreed that Plaintiffs were transported to the Erie Police station where they were placed in separate holding cells.

Meanwhile, following the arrest of Henderson and Scofield, Bailey proceeded to the hospital to interview Mysnyk. At the hospital, Mysnyk informed Bailey that Henderson had been banging on his door with a baseball bat and that Stevenson Jordon, a/k/a "Joker," had come upstairs with a bat and started punching him and then hit him several times with the bat. Mysnyk also identified Henderson and Scofield by

6

name as yelling, screaming, swearing, and banging on his door with a tire iron and a bat in their hands, respectively.

After completing his interview with Mysnyk at the hospital, Bailey returned to the Erie Police Department and attempted to interview Scofield and Henderson. Both Scofield and Henderson denied that Jordan had been present at the scene of the incident. Beyond this, Scofield refused to be interviewed. Henderson was initially prepared to speak but later refused after being read her Miranda rights.

Henderson and Scofield were each charged in separate complaints with the crimes of aggravated assault, conspiracy to commit aggravated assault, and reckless endangerment.[2] The affidavit of probable cause as to both complaints is identical and reads:

> On 6-9-08 Monday this officer along with other officer's [sic] responded to a fight call in the 100 block of [E]ast 30th [S]t. Upon arrival this officer observed the victim (Thomas Mysnyk) staggering down the stairs of his residence. Victim stated that he was beaten up by a black male learned to be Stevenson Jordan. This officer did observed [sic] the victim to have swelling to his head area. Upon further investigation it was determine[d] that there were other parties involved according to a witness and the victim. This officer was advised that the females at 146 [E]ast 30th [Street] were involved and were identified to to [sic] being at the scene by a witness. [T]his officer had both females arrested due to witness statement.

(Pls.' Ex. J and K [22-10 and 22-11]).

The cases were set for a preliminary hearing, but the hearing was originally continued due to the fact that Mysnyk left the building before the hearing convened. On the day of the rescheduled preliminary hearing, Mysnyk was in prison relative to the

---

[2] Stevenson Jordan was also charged with these same crimes, but those charges were ultimately dismissed due to Mysnyk's failure to appear at the preliminary hearing.

break-in of Henderson's home and again failed to appear. After the prosecuting attorney determined that he could not continue without Mysnyk's testimony, the district justice dismissed the charges against Henderson and Scofield.

Plaintiffs subsequently filed these civil actions, asserting identical claims under 42 U.S.C. § 1983. In each case, the complaint contends that Bailey violated the Fourth Amendment rights of the Plaintiff to be free from false arrest, false imprisonment, and malicious prosecution.

Bailey has filed motions for summary judgment in both cases. In each case, his arguments for summary judgment are identical: with respect to the false arrest and false imprisonment claims, he contends that these claims fail because there was probable cause to arrest the Plaintiffs; as to the malicious prosecution claim, Bailey contends both that probable cause existed and that Plaintiffs have failed to establish the element of malice; as an alternative basis for summary judgment, Bailey contends that he is entitled to qualified immunity.

### III.  DISCUSSION

Section 1983 of Title 42, United States Code, provides a civil cause of action to:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

To prevail on a claim under § 1983, a plaintiff must show that a violation of a right secured by the federal constitution or laws occurred and that the alleged violation was

committed by a person acting under color of state law. Groman v. Township of Manalapan, 47 F.3d 628, 633 (3d Cir.1995). It is undisputed that Defendant Bailey, at all relevant times, was acting under color of state law for purposes of § 1983. The critical inquiry here is whether the evidence will support the existence of a constitutional violation. Plaintiffs contend that Bailey violated their respective rights under the Fourth Amendment to be free from unlawful seizure by: (i) subjecting them to false arrest and/or imprisonment and (ii) engaging in a malicious prosecution against them. We consider the two theories seriatim.

A.

The Fourth Amendment prohibits arrest without probable cause. *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482 (3d Cir.1995). Thus, an arrest made without probable cause creates a cause of action for false arrest under 42 U.S.C. § 1983, as well as a claim for false imprisonment based on a detention pursuant to that arrest. *O'Connor v. City of Philadelphia*, 233 Fed. Appx. 161, 164 (3d Cir.2007) (citing *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988) (false arrest) and *Groman v. Township of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995)).

Probable cause supporting a warrantless arrest will be found to exist "when the facts and circumstances known to the arresting officer are sufficient to warrant a reasonable person to believe that an offense has been committed by the suspect." *Knight v. Borough of Penns Grove*, 50 Fed. Appx. 92, 94 (3d Cir. 2002) (*citing United States v. Stubbs*, 281 F.3d 109, 122 (3d Cir.2002); *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir.2000)). *See also United States v. Kithcart*, 134 F.3d 529, 531 (3d Cir.1998) (A

9

warrantless arrest is constitutional if, "at the moment the arrest was made, the officers had probable cause to make it -- whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.") (*quoting Beck v. Ohio*, 379 U.S. 89, 91 (1964)) (internal quotation marks omitted).

As we have noted, Plaintiffs were each charged with the crimes of aggravated assault, conspiracy to commit aggravated assault, and reckless endangerment. In relevant part, a person is guilty of aggravated assault under Pennsylvania law if he or she "attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon." 18 Pa. C.S.A. § 2702(a)(4). In relevant part, one is guilty of conspiracy to commit a crime if, with the intent of promoting or facilitating its commission, he or she "agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime." *Id.* at §903(a)(1). One is guilty of reckless endangerment if he or she "recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." *Id.* at § 2705.

Although the existence or lack of probable cause in a § 1983 case is usually a question of fact for the jury, summary judgment is appropriate when the evidence, viewed in the light most favorable to the plaintiff, could not support a determination that an officer lacked cause to arrest. *Knight, supra,* at 94 (*citing Sharrar v. Felsing*, 128 F.3d 810, 818 (3d Cir.1997); *Sherwood v. Mulvihill*, 113 F.3d 396, 402 (3d Cir.1997)). *See also Deary v. Three Un-Named Police Officers*, 746 F.2d 185, 192 (3d Cir.1984).

10

We do not view this case as one where the existence of probable cause can be determined as a matter of law. It is undisputed that Mysnyk never identified either of the Plaintiffs has having assaulted him and that, on the contrary, he specifically identified "Joker" as the perpetrator of the assault. Defendant appears to concede that, if criminal liability existed on the part of Henderson and Scofield, it would have to be on the basis of accomplice liability based on the theory that they knowingly supplied to "Joker" the weapon used in the assault. Here, however, the record is ambiguous in various respects as it bears on the universe of precise facts that were made known to Bailey, and at what point in time relative to Plaintiffs' arrest, such that the reasonableness of this theory of criminal liability cannot be determined as a matter of law. Because we conclude that a jury, construing the facts of record in the light most favorable to Plaintiffs, could determine that probable cause for the Plaintiffs' arrest was lacking, summary judgment is inappropriate. Accordingly, Defendant's Rule 56 motion will be denied in this respect.

B.

Plaintiffs have also asserted a § 1983 claim premised on a theory of malicious prosecution. It has been said that, "[t]o prevail in a Section 1983[ ] malicious prosecution action, a plaintiff must show: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal

11

proceeding." *DiBella v. Borough of Beachwood*, 407 F.3d 599, 601 (3d Cir.2005) (emphasis added and citation omitted). Defendant contends that summary judgment is appropriate because the third and fourth elements of this claim cannot be established.

Defendant contends that the malicious prosecution claim cannot survive summary judgment because, as a matter of law, probable cause supported the filing of the charges against Henderson and Scofield. Because we perceive the existence or lack of probable cause to turn on disputed issues of historical fact, summary judgment cannot be granted on this basis.

With respect to the issue of malice, Bailey cites *Lee v. Mihalich*, 847 F.2d 66, 70 (3d Cir. 1988) for the proposition that "[a]ctual malice in the context of malicious prosecution has been stated to mean either 'ill will in the sense of spite, lack of belief by the actor himself in the propriety of the prosecution, its use for an extraneous improper purpose or reckless and oppressive disregard of a plaintiff's rights.'" (Br. Of Def. in Supp. Of Mot. For Summ. Judg. [17], at p. 22.) Defendant insists that there is nothing in the record to indicate that he filed the charges against Plaintiffs believing they were improper, for an extraneous purpose or with reckless disregard of the Plaintiffs' rights.

Bailey's reliance on *Lee* in this regard is dubious, however, since *Lee* reflects what "was at one time the law of this circuit," *to wit*, "that a plaintiff alleging a section 1983 claim for malicious prosecution would be required only to show the elements of the common law tort." *Merkle v. Upper Dublin School Dist.*, 211 F.3d 782, 792 (3d Cir. 2000) (citing *Lee*). As our circuit court of appeals has noted, the Supreme Court's decision in *Albright v. Oliver*, 510 U.S. 266 (1994), "'casts doubt' on prior circuit precedent adopting common law malicious prosecution as the test in a §1983 action."

12

*Id.* (citing *Gallo v. City of Philadelphia*, 161 F.3d 217, 221 (3d Cir. 1998)). More specifically, "*Albright* implies that prosecution without probable cause is not, in and of itself, a constitutional tort," and that, "[i]nstead, the constitutional violation is the deprivation of liberty accompanying the prosecution." *Gallo*, 161 F.3d at 222 (citing *Albright*, 510 U.S. at 274 and omitting internal quotations). Accordingly, in *Gallo*, it was held that "a plaintiff asserting a malicious prosecution clam must show some deprivation of liberty consistent with the concept of seizure." *Id.* Notably for our purposes, the court in *Gallo* also said,

> [b]y suggesting that malicious prosecution in and of itself is not a harm, *Albright* also suggests that a plaintiff would not need to prove all of the common law elements of the tort in order to recover in federal court. For instance, if the harm alleged is a seizure lacking probable cause, *it is unclear why a plaintiff would have to show that the police acted with malice*. Justice Ginsburg hints at this point in her concurrence in *Albright*, when she writes that the constitutional tort authorized by section 1983 "stands on its own, influenced by the substance, but not tied to the formal categories and procedures, of the common law." *Albright*, 510 U.S. at 277 n.1.

*Gallo*, 161 F.3d at 222 n. 6 (emphasis supplied).

Accordingly, it is not entirely clear, in the wake of the Supreme Court's decision in *Albright* and subsequent Third Circuit rulings, whether *Lee* remains good law and, more specifically, whether federal constitutional jurisprudence even requires the element of "malice" to be established for purposes of a § 1983 claim premised on the wrongful prosecution of a criminal accused, although there are recent circuit decisions which still recite malice as an element of the constitutional tort. *See DiBella, supra,* at 599.

Assuming malice must be shown, though, we note that other courts have held that malice may be inferred from the absence of probable cause. *See Rusch v. Versailles Borough*, No. Civ. A. 05-0138, 2006 WL 2659275 at *6 (W.D. Pa. Sept. 15, 2006) (noting that there were disputed facts bearing on the issue of probable cause which "may be relevant to the element of malice, as well, since malice may be inferred from the absence of probable cause") (citing *Russoli v. Salisbury Twp.*, 126 F. Supp. 2d 821, 871 (E.D. Pa. 2000)). *See also Robinson v. Chambers*, Civil Action 2:06-cv-02284 (JLL), 2006 WL 1995106 at *2 (D.N.J. July 14, 2006).

C.

Bailey also contends that, even if probable cause did not exist for the Plaintiffs' arrest and prosecution, he is entitled to qualified immunity. The qualified immunity doctrine shields a government official "from liability for civil damages insofar as [her] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether qualified immunity applies, a court must consider, viewing the facts in the light most favorable to the plaintiff, (1) whether there was a violation of a constitutional right and (2) whether such a right was clearly established at the time of the violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

At this stage of the proceedings, the court cannot determine whether the individual defendants are entitled to qualified immunity because disputed issues of material fact exist on this record relative to the issue of probable cause and, more specifically, the facts that were made known to Defendant Bailey in connection with the

14

arrest of Plaintiff and the filing of criminal charges.  Among other things, the record in this case is ambiguous in terms of what information Heasley made known to Bailey via Sornberger and whether that information was communicated to Bailey on-scene or later sometime that evening.  In addition, Plaintiffs have contended that they were arrested immediately after having been brought to Mysnyk for an identification, at which time he had indicated "No, I don't know who did this to me."  (Pls.' Ex. C [22-1] at p. 19.)

In sum, the first prong of the qualified immunity analysis depends upon the resolution of factual issues bearing on probable cause, making summary judgment on this ground inappropriate.  *See Monteiro v. City of Elizabeth*, 436 F.3d 397, 405 (3d Cir.2006) (holding that "when qualified immunity depends on disputed issues of fact, those issues must be determined by the jury").  This ruling, however, is without prejudice, and the Defendant may raise a qualified immunity defense after the disputed issues of fact are resolved.

## IV.  CONCLUSION

Based upon the foregoing reasons, the Defendant's motion for summary judgment will be denied.  An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TANESHA HENDERSON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:09-cv-36-SJM |
| v. | ) | |
| | ) | |
| OFFICER WILLIAM BAILEY, | ) | |
| | ) | |
| Defendant. | ) | |

_____

| | | |
|---|---|---|
| TORI SCOFIELD, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:09-cv-37-SJM |
| v. | ) | |
| | ) | |
| OFFICER WILLIAM BAILEY, | ) | |
| | ) | |
| Defendant. | ) | |

## **O R D E R**

AND NOW, *to wit,* this 31st Day of March, 2011, for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that the Defendant's motion for summary judgment be, and hereby is, DENIED.

s/ <u>Sean J. McLaughlin</u>

Sean J. McLaughlin
United States District Judge

cc: All counsel of record